IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
On-Briefs February 6, 2003

**IN THE MATTER OF: R.L.H., A Child under Eighteen (18) Years of Age,
STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v.
DARLENE MEDLEY HALL**

**A Direct Appeal from the Juvenile Court for Franklin County
No. J00721 The Honorable Floyd D. Davis, Judge**

_____

**No. M2002-01179-COA-R3-JV - Filed June 3, 2003**

_____

W. Frank Crawford, P.J., W.S., dissents.

**DISSENTING OPINION**

While I concur in the majority's opinion finding that grounds for termination of Hall's parental rights as to R.L.H. have been established by clear and convincing evidence, I dissent as to the majority's conclusion that termination of Hall's parental rights is in the best interests of the minor child. I recognize that the evidence is certainly not favorable to Hall in some particulars, including the fact that her sole support is derived from social security, that she has no prospects of employment in the near future, her past failure to provide a safe and suitable home for the minor child in the face of abuse, her impaired mental condition, and the fact that Hall had no suitable residence for the child at the time of trial. However, this court must balance this evidence with the situation as it pertains to R.L.H. R.L.H. is a special needs child who has specific learning, speech, and behavioral problems. All reports indicate that R.L.H. is in need of continued counseling and therapy. Under the current arrangement, R.L.H. resides in a therapeutic foster home under the care of trained foster parents. This foster home has served as a stable and supportive environment for the minor child since approximately July 2000.

In addition to the care R.L.H. receives from his foster parents, the child has also been enrolled in a local school since July 2000, where he benefits from special education curriculum. Although R.L.H. still engages in inappropriate conduct on occasion (lying, stealing, disruptive behavior), he has "made improvements in the areas of stealing and lying in the past few months" and has shown "some progress" with regard to his behavior in school.

The positive and stable influence R.L.H. receives from his foster home and special education classes is further strengthened through regular supervised visitations with Hall.

Valerie Simmons ("Simmons"), the individual responsible for supervising the visits between Hall and R.L.H., testified that mother has maintained regular visitation with minor child, and further noted that mother and son share a bond. Simmons testified that R.L.H. is always glad to see Hall, and noted that the two are affectionate towards one another, often verbally expressing their love for one another. R.L.H.'s desire to be reunited with his mother is further evidenced by an observation listed in the October 15, 1999 parenting plan, stating that R.L.H. loves his family and wants to return home.

The care, supervision, and training provided in the foster home and school programs, combined with the documented fulfillment and joy the child experiences through regular visitations with his mother, has created a stable "home" environment that serves as an emotional anchor for the child. It is my concern that termination of Hall's parental rights could severely disrupt the child's life. Although there is no proof in the record as to whether termination would have such an effect, a psychological evaluation of R.L.H. is desirable and necessary to determine if termination would cause the child to regress.

Furthermore, the concerns raised by the majority regarding the physical environment of Hall's home, and her impaired mental state, are somewhat diminished under the present circumstances of supervised visitation. There is no evidence in the record that Hall's mental and emotional condition hinders her visits with R.L.H., or has a negative impact on the minor child's emotional status. Moreover, because R.L.H. resides in the exclusive physical custody of his foster parents, the physical or permanent condition of mother's home, under these particular circumstances, is irrelevant.

The majority concludes that termination is in R.L.H.'s best interest considering the child's age and in light of the majority's belief that "continuation of the parent ... and child relationship greatly diminishes [his] chances of early integration into a safe, stable and permanent home." While it is reasonable to assume that as a child ages, his chances of adoption generally diminish, I stress that R.L.H. is twelve years old, and note that there is nothing in the record to indicate that he is subject for adoption or currently has reasonable prospects for adoption. Based on R.L.H.'s advanced age, and his learning and behavioral difficulties, I am not optimistic that the child is or would be a likely candidate for adoption. Therefore, under the exceptional circumstances of this case, to deprive R.L.H. of his only natural family relationship, a relationship that the child has expressed an unequivocal desire to maintain, without any evidence of adoption prospects, would not be in his best interest.

Considering all of these factors and the effect that Hall's parental termination at this time would have on the child, I believe that it is in the best interest of the child that the present situation of supervised visitation be continued. By allowing visitation to continue, it is my hope that the situation as it stands will facilitate continued improvement of Hall's condition and R.L.H.'s condition to the extent that a reuniting of parent and child may be made. To be perfectly clear, I do not conclude that R.L.H. should be removed from his current foster home to Hall's custody. Rather, it is anticipated that the efforts and compliance of Hall and DCS with

regard to the established permanency plan will continue, and DCS will maintain supervision over this matter as it has since the beginning of these proceedings. Under the record before this court, I find that the evidence preponderates against the trial court's finding of clear and convincing evidence that termination is in the best interest of the child. This is not to say that termination of Hall's parental rights at some future time is foreclosed.

I, in no way, advocate a return of custody to Hall at this time, or any time, unless she makes a vast improvement in correcting the conditions reflected in this record. However, simply stated, in my view of the record, the majority has failed to recognize the possible effect on R.L.H. in the termination of his mother's parental rights. This child is 12 years old with a multitude of problems and no prospects for adoption into a stable family environment. He has very few positive things in his life except for the love he has for his mother and his looking forward to visitation with his mother in the hope that some day he would return to his mother. The majority thinks that it is in his best interest to take this glimmer of hope away from him without any consideration of what it would do to his present precarious position. I cannot agree to such a situation.

Accordingly, I dissent from the majority's Opinion finding that the termination of Hall's parental rights is in the best interest of the minor child. I would reverse the order of the trial court and remand the case to the juvenile court for such further proceedings as may be necessary.

_____
W. FRANK CRAWFORD, PRESIDING
JUDGE, W.S.